United States Court of Appeals,

Fifth Circuit.

No. 95-20487.

Marian E. BRITTON, Plaintiff-Appellant,

v.

Robert A. SEALE, Jr., John B. Holstead, and Roger L. Beebe, Defendants-Appellees.

April 30, 1996.

Appeal from the United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, and HIGGINBOTHAM and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Marian Britton ("Britton") appeals the dismissal of her legal malpractice action. Finding no error, we affirm.

I.

This suit arises from a feud between Britton and her brothers (collectively "the Brittons" or "the children") over their respective inheritances. The Brittons' parents created a number of partnerships and trusts, including three for Britton, and named their sons as trustees. Britton later sued her brothers for an accounting, apparently believing they had stolen from her trusts.

While that litigation was pending, the probate court declared the Brittons' mother to be incompetent and made her a ward of that court; their father had died earlier. The children eventually settled the suit, largely with their mother's money. The settlement provided that the mother's guardian would not investigate wrongdoing by either the children or lawyers and other

1

professionals who had represented the mother; the probate court later transferred any claims the mother had against professionals to her children.

Defendants and their law firm handled estate work for the Brittons' parents and continued to represent the mother and her court-appointed guardian during Britton's suit. They also defended Britton's brothers against that suit and helped negotiate the settlement.

Britton brought this legal malpractice action against the individual attorneys, asserting that they violated their professional duties to her mother because of a conflict of interest. The district court found that "legal malpractice claims are not assignable" under Texas law and dismissed the complaint.[1]

## II.

Britton alleges that defendants suffered from a conflict of interest in representing both the mother and the sons. She further contends that defendants took advantage of the mother by encouraging her to fund the settlement of her daughter's suit and to pay other debts of her sons. Britton also alleges that Beebe undervalued assets on an estate tax valuation.

Britton concedes that the dispositive question on appeal is

---

[1]Britton argues that the district court should have converted defendants' motion to dismiss into one for summary judgment because defense counsel presented "extraneous matters" to the court. The district court's holding does not rely on any evidence outside the pleadings, however, and the mere presence of additional issues in the record did not require the court to treat the motion as one for summary judgment. *See Davis v. Bayless,* 70 F.3d 367, 372 n. 3 (5th Cir.1995).

2

whether the probate court's transfer order gave her standing to bring this action. The Texas Supreme Court recently answered this question by adopting the following court of appeals holding:

> On balance, we conclude that the costs to the legal system of assignment outweigh its benefits. We hold that an assignment of a legal malpractice action arising from litigation is invalid.

*Zuniga v. Groce, Locke & Hebdon,* 878 S.W.2d 313, 318 (Tex.App.—San Antonio 1994, writ refused).[2]

### A.

Britton contends that *Zuniga* is distinguishable because her mother's claims arise from estate work, not litigation. While the court of appeals limited the express holding of *Zuniga* to claims arising from litigation, its reasoning extends well beyond the facts of that case. The court discussed the pros and cons of assignment and concluded generally that "the costs to the legal system of assignment outweigh its benefits." *Id.* The only other court that has interpreted *Zuniga* read it broadly: "Because we agree with appellees and the reasoning set forth in [*Zuniga* ], we hold that legal malpractice claims are not assignable." *City of Garland v. Booth,* 895 S.W.2d 766, 769 (Tex.App.—Dallas 1995, writ denied).

---

[2]The notation "writ refused" indicates that the court found that "the judgment of the court of appeals is correct and ... the principles of law declared in the opinion ... are correctly determined." TEX.R.APP.P. 133(a). Thus, "a decision ... in which the Supreme Court refuses a writ of error is as binding as a decision of the Supreme Court itself." *"21' Int'l Holdings v. Westinghouse Elec. Corp.,* 856 S.W.2d 479, 483 (Tex.App.—San Antonio 1993, no writ) (quoting *Ohler v. Trinity Portland Cement Co.,* 181 S.W.2d 120, 123 (Tex.Civ.App.—Galveston 1944, no writ)).

Britton argues that despite the breadth of the language quoted above, Texas courts are concerned only with specific abuses—such as sale to strangers for profit and transfer by defendants in settlement of litigation—and not with assignment in general.[3] Britton is correct in noting that the Texas cases discuss a variety of specific problems that would result from permitting assignment, but she is wrong in concluding that they limit the ban on assignment to cases presenting those problems. Instead, *Zuniga* and *Booth* appear to prohibit assignment altogether in order to prevent such problems from occurring. *See Zuniga,* 878 S.W.2d at 317 ("Ultimately, to allow assignment would make lawyers reluctant—and

---

[3]Britton also cites a few inapposite Texas cases in an attempt to undercut *Zuniga.* First, she argues that the state supreme court specifically reserved the question of whether legal malpractice claims are assignable, *see American Centennial Ins. Co. v. Canal Ins. Co.,* 843 S.W.2d 480, 484 n. 6 (Tex.1992), and a lower court subsequently noted that the supreme court's position on the issue "is uncertain," *see Charles v. Tamez,* 878 S.W.2d 201, 206 (Tex.App.—Corpus Christi 1994, writ denied). While Britton's characterization of those cases is accurate, it is also misleading, as both *American Centennial* and *Charles* preceded *Zuniga.*

Second, Britton observes that a court of appeals stated in *dicta* that attorney malpractice claims may be assigned. *See Stonewall Surplus Lines Ins. Co. v. Drabek,* 835 S.W.2d 708, 711 (Tex.App—Corpus Christi 1992, writ denied). *Zuniga,* however, expressly overruled that portion of *Stonewall Surplus. See Zuniga,* 878 S.W.2d at 314-15.

Finally, though no one has cited it, we note that the same court of appeals also found that a woman had standing to prosecute a legal malpractice action that her husband had assigned to her. *See Pankhurst v. Weitinger & Tucker,* 850 S.W.2d 726 (Tex.App.—Corpus Christi 1993, writ denied). *Pankhurst* discusses the issue as one of marital property, not assignment in general, and preceded both *Charles,* in which the same court of appeals disallowed an assignment, and *Zuniga.* If *Pankhurst* retains any vitality, it does so only in the context of family law.

4

perhaps unwilling—to represent defendants with inadequate insurance and assets."); *Booth,* 895 S.W.2d at 769 (reasoning that "to allow assignability of such claims would relegate the legal malpractice action to the marketplace and convert it to a commodity to be exploited").[4]

Even if the Texas Supreme Court were to limit its ban on assignment of legal malpractice claims to those "arising from litigation," the instant situation would still fall within that ban. The mother's guardian assigned these claims to the children following their settlement of the earlier litigation, and the underlying subject matter of that litigation was substantially the same as the issue in this suit: fraudulent mismanagement of the Britton trusts. In fact, Britton alleges in this suit that defendants conspired with her brothers to defraud her mother in connection with the settlement of the earlier suit. As a result, it is not a stretch to say that the present suit "aris[es] from litigation."

B.

Britton argues that the assignment is valid because her

---

[4]*Zuniga* and *Booth* both look to the leading opinion on this subject, *Goodley v. Wank & Wank, Inc.,* 62 Cal.App.3d 389, 133 Cal.Rptr. 83 (1976), which states:

> It is the unique quality of legal services, the personal nature of the attorney's duty to the client and the confidentiality of the attorney-client relationship that invoke public policy considerations *in our conclusion that malpractice claims should not be subject to assignment.*

*Id.* at 87 (emphasis added).

5

mother's claims passed to the children "by operation of law." She relies on a bankruptcy opinion that observes, in *dicta,* that "it is not self-evident that, under California law, a claim for legal malpractice would not pass by operation of law, as, for example, to the malpractice plaintiff's heirs in the event of death, or to the successor of a corporate plaintiff merged out of existence or dissolved." *Ellwanger v. Budsberg (In re Ellwanger),* 140 B.R. 891, 899 (Bankr.W.D.Wash.1992). Defendants respond that even if the probate court had authority to transfer the mother's claims to the guardian "by operation of law," such an exception would not cover the guardian's subsequent assignment to the children.

As the state has declared the mother to be legally incompetent and has deprived her of the right to manage her own affairs, there is considerable force to Britton's contention that the state ought to permit *someone* to prosecute the mother's claims for her. Britton errs, however, in assuming that she is that person. To the extent that the claims passed "by operation of law," they passed to the guardian, not Britton. Moreover, Texas could assuage the concerns discussed in *Ellwanger* by permitting the guardian to prosecute the mother's claims as part of his general duty to manage her estate. Thus, Britton would not benefit from any such exception.

Nonplused, Britton contends that her mother's claims passed "by operation of law" a second time when the guardian transferred them to the children. She further asserts that this second transfer differed from an ordinary assignment in that the probate

court approved the guardian's request to assign the claims and then ordered him to do so, pursuant to the probate code.

Under Texas law, the mere fact that a court has general statutory authority to order the transfer of property does not permit it to order the transfer of a legal malpractice claim.[5] Thus, while a probate court order directing the transfer of such a claim might be said to effect an assignment "by operation of law," it would also do so in derogation of law. Such an order would still be entitled to full res judicata and collateral estoppel effect, but, as discussed below, defendants are not bound by the probate court's order. Absent such preclusive effect, the order is ineffectual to the extent that it purports to assign legal malpractice claims.[6]

## C.

Britton contends that her contract, fraud, conspiracy, and deceptive trade practices claims are "independent" of her negligence and fiduciary duty claims and therefore escape Texas's ban on assignability. In the district court, however, Britton filed a document stating that "[t]his is a legal malpractice action...." In addition, each of Britton's claims alleges that the

---

[5]*See Charles,* 878 S.W.2d at 205, 208 (holding that, at least under some circumstances, a judgment creditor is not entitled to transfer of a legal malpractice cause of action under Texas's turnover statute); *Zuniga,* 878 S.W.2d at 317 & n. 5 (extending *Charles* to all legal malpractice claims).

[6]To be fair to the probate court, we note that it transferred a broad class of claims, including all those the mother had against professionals. As a result, it did not directly address the question of whether the guardian should transfer the mother's *legal* malpractice claims.

7

defendant attorneys acted improperly in the course of performing legal services for a client. Finding no reason to depart from Britton's own characterization of her suit, we conclude that all of her claims assert legal malpractice and are non-assignable.

### III.

Britton contends that the probate court's transfer order is res judicata as to defendants' non-assignability defense. She explains that because the probate court decided that the mother's claims should be transferred to her children, defendants could have contested the transfer's validity in that court.

As a threshold matter, defendants contend that Britton's argument is properly analyzed under the principle of collateral estoppel, not res judicata, because she requests preclusion only as to a single issue—the defense of non-assignability—not an entire cause of action. Because a Texas court rendered the earlier judgment, Texas law governs its preclusive effect. *See Heller Fin. v. Grammco Computer Sales,* 71 F.3d 518, 523 n. 4 (5th Cir.1996). Texas uses res judicata as a bar not only to causes of action, but also to at least some defenses that could have been raised in the earlier proceeding. *See, e.g., Jones v. Strauss,* 800 S.W.2d 842, 844 (Tex.1990). While Britton's res judicata argument is a weak one, it is at least within the scope of that doctrine.

The doctrine of res judicata does not preclude defendants from contesting the transfer's validity, however, because it bars litigation only between the parties to the earlier suit and those in privity with them. *See Getty Oil Co. v. Insurance Co. of N.*

*Am.,* 845 S.W.2d 794, 800 (Tex.1992), *cert. denied,* --- U.S. ----, 114 S.Ct. 76, 126 L.Ed.2d 45 (1993). Defendants were not parties to the probate proceeding and did not represent any parties at the time the court approved the assignment. In fact, the probate court's transfer order specifically names the people it "shall be binding upon"; defendants are not among them.

Britton contends nonetheless that defendants were "parties-in-interest" to the proceeding because they were creditors of the estate. While Britton is correct that Texas law generally permits creditors of an estate to participate in probate proceedings, *see* TEX.PROB.CODE ANN. §§ 3(r), 10 (Vernon 1980), at least one Texas court has restricted the participation of "interested persons" to matters in which their own interests are materially affected. *See Guardianship of Price v. Murfee,* 408 S.W.2d 756, 758 (Tex.Civ.App.—Amarillo 1966, no writ). As the judgment itself enumerates those it intends to bind, we decline to expand its scope indiscriminately to all creditors of the estate.

In summary, we conclude that in Texas, most if not all claims of legal malpractice, including this one, cannot be assigned. Britton has no standing, and the judgment, accordingly, is AFFIRMED.